UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHYLLIS WHITTEN,<br><br>             Plaintiff,<br><br>      v.<br><br>FRONTIER COMMUNICATIONS<br>CORPORATION, ET AL.,<br><br>             Defendants. | No. 2:12-cv-02926-TLN-EFB<br><br>**ORDER** |

This matter is before the Court on Defendants Frontier Communications Corporation ("Frontier"), Citizens Telecom Services Company, LLC ("Citizens"), and Kevin Mailloux's (hereinafter collectively referred to as "Defendants") Motion for Summary Judgment, or, in the alternative, Motion for Summary Adjudication.  (Defs.' Mot. for Summ. J., ECF No. 30.)  Plaintiff Phyllis Whitten ("Plaintiff") opposes the motion.  (Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. for Summ. J., ECF No. 34.)  The Court has carefully considered the arguments raised by both parties.  For the reasons set forth below, Defendants' Motion for Summary Judgment or, in the alternative, Motion for Summary Adjudication is GRANTED IN PART and DENIED IN PART.

///

///

1

## I.  FACTUAL BACKGROUND

On November 8, 2010, Plaintiff began working for Frontier, a communications services provider, as Associate General Counsel of Frontier's West Region.  (ECF No. 1 at 24; ECF No. 30-1 at 7.)  Prior to beginning her employment with Frontier, Plaintiff spoke with Kevin Saville, Vice President and Associate General Counsel of Frontier, on July 14, 2010.  (ECF No. 34 at 4; ECF No. 30-1 at 7–8.)  During their conversation, Saville informed Plaintiff that Frontier's Legal Department operated in a "lean" fashion and represented that he handled matters himself, and if Plaintiff accepted the position, she would be expected to do the same.  (ECF No. 34 at 4; ECF No. 30-1 at 7–8; Pl.'s Resp. to Defs.' Separate Statement of Undisputed Facts ("SUF"), ECF No. 34-1 at ¶¶ 83, 86.)  Plaintiff interpreted Saville's statement to mean that neither Saville nor she would have administrative assistance.  (ECF No. 34 at 4.)  Defendants dispute whether Saville's statements related to administrative support.  (ECF No. 35 at 14.)

After accepting her position with Frontier, Plaintiff moved from Maryland to California.  (ECF No. 1 at 29; ECF No. 34 at 17; ECF No. 30-1 at 7.)  Plaintiff worked in Frontier's Elk Grove, California office.  (ECF No. 1 at 24; ECF No. 30-1 at 7.)  Saville, who is based in Mound, Minnesota, served as Plaintiff's supervisor.  (ECF No. 34 at 4; ECF No. 30-1 at 7.)  Additionally, Saville supervised the two other regional attorneys: Gregg Sayre, Counsel for the Eastern Region in Rochester, New York, and Joseph Starsick, Counsel for the Southern Region in Charleston, West Virginia.  (ECF No. 1 at 25; ECF No. 30-1 at 9.)

During Plaintiff's first week of employment, Plaintiff claims she received a phone call from Barbara Matson, who represented that she was Saville's assistant.  (Pl.'s Decl., ECF No. 34-2 at ¶ 37.)  Matson is an administrative assistant, located in Mound, Minnesota.  (ECF No. 34 at 10; ECF No. 30-1 at 9.)  According to Plaintiff, it was at this point in time that she learned Saville, in fact, receives on-site administrative support.  (ECF No. 34-2 at ¶ 37; ECF No. 34 at 9; ECF No. 30-1 at 7, 9.)

As time passed, Plaintiff also learned the other two regional attorneys received on-site administrative assistance.  (ECF No. 1 at 25; ECF No. 30-1 at 9–10.)  Starsick receives on-site support from Sheri Comer in Charleston, West Virginia.  (ECF No. 1 at 25; ECF No. 34 at 8;

ECF No. 30-1 at 9–10.)  Sayre, while employed at Frontier, received on-site support from Holly James in Rochester, New York.  (ECF No. 1 at 25; ECF No. 34 at 4; ECF No. 30-1 at 13.)  Although Plaintiff received some off-site administrative support from Matson, Plaintiff claims that she did not receive on-site support like her male colleagues.  (ECF No. 1 at 25.)

Plaintiff began requesting on-site administrative assistance shortly after being hired.  (ECF No. 1 at 25; ECF No. 30-1 at 6.)  However, Plaintiff found that all of her requests were futile.  (ECF No. 1 at 25.)  Due to her lack of administrative support, Plaintiff claims she was forced to do so much keyboarding and other administrative work that she suffered De Quevain's tendonitis and carpel tunnel in her right hand, wrist, and arm.  (ECF No. 1 at 25.)  Plaintiff emailed Saville on March 1, 2012 to inform him of her tendonitis.[1]  (Pl.'s Mar. 1, 2012 Email, ECF No. 34-6 at 1.)

For the majority of Plaintiff's employment with Frontier, Plaintiff worked with Denise Baumbach.  (ECF No. 34 at 11; ECF No. 30-1 at 8.)  Baumbach is President of Frontier's West Region and was a very important internal client of Plaintiff's while she was employed at Frontier.  (ECF No. 34 at 11; ECF No. 30-1 at 8.)  According to Defendants, Baumbach had three bad experiences with Plaintiff during the months of March and April 2012.  (ECF No. 34 at 11–13; ECF No. 30-1 at 11–12.)  First, Defendants state that Baumbach was unhappy with Plaintiff's communication of a settlement offer.  (ECF No. 34 at 11–13; ECF No. 30-1 at 11.)  Second, Defendants contend that Baumbach was displeased with Plaintiff's behavior at Frontier's Lobby Day in Sacramento in mid-March 2012.  (ECF No. 34 at 11–12; ECF No. 30-1 at 11.)  Third, Defendants claim Baumbach was unsatisfied with Plaintiff's overbroad communications regarding a marketing campaign issue in late-March 2012.  (ECF No. 34 at 11, 13; ECF No. 30-1 at 11.)  Defendants allege that these three events and Baumbach's overall lack of trust in Plaintiff's judgment resulted in Baumbach notifying Saville, on April 6, 2012, that she would no

---

[1] Plaintiff emailed,

> Just FYI.  Lately I've had tendonitis in my right arm, wrist, hand, and my doctor suggest that I get an ergonomic evaluation for my office.  I checked with Trina Smith in Elk Grove, and she will work with me to get some different computer tools to see if that helps.  (She is also teasing me about the SWAT team showing up next door yesterday AM).

(ECF No. 34-6 at 1.)

longer rely on Plaintiff for legal advice. (ECF No. 30-1 at 11–12; ECF No. 34-1 at ¶¶ 43–44.)

On April 10, 2012, Saville sent a lengthy email to Plaintiff, criticizing her work on an arbitration case. (Saville's Apr. 10, 2012 Email, ECF No. 30-7 at 131–33; ECF No. 34-1 at ¶ 45; ECF No. 30-1 at 12.) Specifically, Saville informed Plaintiff that the quality of her work and her management of the case did not meet his or Frontier's standards.[2] (ECF No. 34-1 at ¶ 45; ECF No. 30-1 at 12.) Plaintiff immediately responded to Saville's email, complaining that all of her male peers have on-site assistance.[3] (Pl.'s April 10, 2012 Email, ECF No. 34-7 at 1; ECF No. 34 at 4, 17; ECF No. 30-1 at 12.) Plaintiff claims that her April 10, 2012, email to Saville "raised the specter of gender discrimination." (ECF No. 34 at 5.)

Two days later, Plaintiff alleges Kathleen Abernathy, who served as Chief Legal Counsel during most of Plaintiff's employment, made the decision to terminate Plaintiff. (ECF No. 34 at 5, 14.) Abernathy emailed Cecilia McKinney, the Executive Vice President for Human Resources and Call Centers, on April 12, 2012, regarding Plaintiff. (Abernathy's April 12, 2012 Email, ECF No. 34-9 at 1; ECF No. 34 at 14; ECF No. 30-1 at 7.) Abernathy asked McKinney to recommend a possible severance package for Plaintiff.[4] (ECF No. 34-9 at 1; ECF No. 34 at 14; ECF No. 34-1 at ¶ 54.)

On April 23, 2012, Plaintiff sent a more thorough, follow-up email to Saville.

---

[2] Saville wrote, "Over the last few weeks since your performance review, I have been monitoring your work on the Granite arbitration/dispute and need to communicate to you that I have not found that the quality of your work or your management of the case meets Frontier's standards or my expectations." (ECF No. 30-7 at 131.)

[3] Plaintiff informed Saville,

> As you know, we've spoken by telephone, and I am disheartened and frustrated that you have the mistaken impression that I haven't closely supervised the Granite matter. I will prepare a more formal response to your message, our conversation, and the review and we can talk more about it next week—at the moment I am feeling fairly beaten up and unfairly attacked—I've included a few notes below. As indicated, I am the only attorney you supervise who does not have a legal assistant onsite, and I repeatedly have asked for more help, and been told that I should be able to manage without the help you and my male colleagues you supervise receive routinely. Although I do get help (and appreciate that help from Barbara), I do all my own administrative and legal work for a very large complex region here in addition to this specific case, without any other assistance and I'd like to spend some time discussing these issues.

(ECF No. 34-7 at 1.)

[4] Specifically, Abernathy wrote,

> After speaking with both Denise and Kevin it appears that Phyllis is not going to be able to adapt and adjust to the demands of the job. I would like to give her severance and handle this with respect because she has tried but it is simply not working. What do you recommend with regard to severance?

(ECF No. 34-9 at 1.)

4

(Pl.'s April 23, 2012 Email, ECF No. 30-7 at 124–27.)  Saville responded to Plaintiff's email, on April 24, 2012, requesting an in-person meeting.  (Saville's April 24, 2012, ECF No. 30-1 at 123–24; ECF No. 34-1 at ¶ 47; ECF No. 30-1 at 12.)  On May 3, 2012, Saville and Kevin Mailloux, the Human Resources Director, met with Plaintiff to inform her that she was being placed on a Performance Improvement Plan ("PIP").  (ECF No. 1 at 25–26; ECF No. 30-1 at 12.)  Plaintiff alleges that just before this meeting, Mailloux commented that Plaintiff was "playing the victim." (ECF No. 1 at 26, 28.)  Plaintiff is unsure whether Mailloux's comment was based upon her gender or her wrist injury.  (ECF No. 34 at 15; ECF No. 30-1 at 20.)  As an additional allegation, Plaintiff claims that Mailloux made disparaging remarks about Frontier female executives on a previous occasion.  (ECF No. 1 at 28; ECF No. 30-1 at 20.)

During June 2012, Abernathy became Frontier's Executive Vice President of External Affairs, and Andrew Crain assumed Abernathy's previous job of Chief Legal Officer. (ECF No. 34 at 5; ECF No. 30-1 at 13; ECF No. 34-1 at ¶ 60.)  Plaintiff claims that sometime between mid-May and early-June 2012, Abernathy informed Crain that she had decided to terminate Plaintiff.  (ECF No. 34 at 14; ECF No. 34-1 at ¶ 62.)  Defendants admit that on June 18, 2012, Abernathy, Crain, and McKenney discussed severance for Plaintiff in the event that Plaintiff's position was eliminated, but Defendants do not admit that the decision to terminate Plaintiff had been made.  (ECF No. 30-1 at 13; ECF No. 34-1 at ¶ 62.)  Despite these communications, Plaintiff remained on the PIP until July 31, 2012.  (ECF No. 34 at 5; ECF No. 30-1 at 7.)

On August 10, 2012, Frontier terminated Plaintiff.  (ECF No. 34 at 5; ECF No. 30-1 at 7.)  Defendants allege that Plaintiff's position was eliminated due to Frontier's reorganization of its Legal Department.  (ECF No. 1 at 28; ECF No. 30-1 at 6.)  Defendants claim Plaintiff's position was selected for elimination for two reasons: (1) because of Platiniff's poor performance reviews; and (2) because Plaintiff's primary client, Baumbach, expressed a lack of confidence in Plaintiff.  (ECF No. 30-1 at 6.)  After Plaintiff's termination, Frontier's workers' compensation carrier, Citizens, placed Plaintiff on total temporary disability due to her wrist injury.  (ECF No. 34 at 5.)  Plaintiff remained on total temporary disability until she began working for iPass in

January 2013.  (ECF No. 34 at 5.)

In April 2013, Frontier hired a new regional counsel, George Thomson.  (ECF No. 34 at 8; ECF No. 30-1 at 13–14.)  The parties dispute whether Thomson replaced Plaintiff or Sayer, who resigned as Counsel for the East Region on July 8, 2012.  (ECF No. 34 at 5–6; ECF No. 34-1 at ¶¶ 63–64.)

## II.    PROCEDURAL HISTORY

On September 18, 2012, Plaintiff filed a complaint with the California Department of Fair Employment and Housing ("DFEH") charging Defendants with sex discrimination in violation of California's Fair Employment and Housing Act ("FEHA").  (Pl.'s Compl. of Discrimination to DFEH, ECF No. 1 at 19–20; ECF No. 1 at 26.)  The DFEH issued Plaintiff a Right To Sue Letter.  (DFEH's Right to Sue Letter, Sept. 18, 2012, ECF No. 1 at 21; ECF No. 1 at 26.)  On November 19, 2012, Plaintiff filed her First Amended Complaint ("FAC") in the Superior Court of Sacramento County.  (Pl.'s First Am. Compl., ECF No. 1 at 23–31.)  Plaintiff's FAC alleged seven causes of action: (1) sex discrimination by Frontier in violation of FEHA;[5] (2) retaliation by Frontier; (3) failure to prevent discrimination, retaliation, and harassment by Frontier; (4) harassment by Kevin Mailloux; (5) wrongful discharge in violation of public policy for claiming workers' compensations benefits by Frontier; (6) violation of Labor Code § 970 by Frontier; and (7) violation of Labor Code § 226 against Frontier and Citizens.  (ECF No. 1 at 23–31.)  Plaintiff later dismissed her Seventh Cause of Action.[6]  (Dismissal Limited to Seventh Cause of Action, ECF No. 29.)

On December 2, 2012, Defendants collectively answered Plaintiff's FAC, asserting thirty-four affirmative defenses.  (Defs.' Answer, ECF No. 1 at 41–48.)  On December 3, 2012, Defendants removed this action to federal court based on diversity jurisdiction.  (Defs.' Notice of Removal, ECF No. 1 at 1–9.)  The parties engaged in discovery from early 2013 to

---

[5] Throughout Plaintiff's Opposition and Defendants' Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, the parties occasionally refer to "sex discrimination" as "gender discrimination." (*See, e.g.*, ECF No. 34 at 11; ECF No. 30-1 at 14.)  For clarification, "sex" includes "gender," and "gender" means "sex." Gov. Code § 12926(r)(2).  Plaintiff's discrimination claim is based on her gender.  Therefore, for purposes of this case, the terms "sex" and "gender" have the same meaning.

[6] Because this was the only cause of action against Defendant Citizens, they were dismissed and are no longer a party to this suit.  (*See* Minute Order, ECF No. 57.)

1  early 2014.  (Status [Pretrial Scheduling] Order, ECF No. 14.)

2        Following the completion of discovery in April 2014, Defendants filed a Motion

3  for Summary Judgment, or in the alternative, Motion for Summary Adjudication contending that

4  there is no genuine issue as to any material fact, and thus Defendants are entitled to judgment as a

5  matter of law.  (Defs.' Mem. of P. & A. in Supp. of Defs.' Mot., ECF No. 30-1.)  Alternatively,

6  Defendants request the Court to grant summary adjudication as to several noticed issues.  (ECF

7  No. 30.)  Plaintiff opposes Defendants' Motion.  (ECF No. 34.)

8        **III.    STANDARD OF LAW**

9        Summary judgment is appropriate when the moving party demonstrates no

10  genuine issue as to any material fact exists, and therefore, the moving party is entitled to

11  judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

12  157 (1970).  Under summary judgment practice, the moving party always bears the initial

13  responsibility of informing the district court of the basis of its motion, and identifying those

14  portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together

15  with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material

16  fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will

17  bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly

18  be made in reliance solely on the pleadings, depositions, answers to interrogatories, and

19  admissions on file."  *Id.* at 324 (internal quotations omitted).  Indeed, summary judgment should

20  be entered against a party who does not make a showing sufficient to establish the existence of an

21  element essential to that party's case, and on which that party will bear the burden of proof at

22  trial.

23        If the moving party meets its initial responsibility, the burden then shifts to the

24  opposing party to establish that a genuine issue as to any material fact actually does exist.

25  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l

26  Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the

27  existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings,

28  but is required to tender evidence of specific facts in the form of affidavits, and/or admissible

7

discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First Nat'l Bank*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at 587.

## IV.  ANALYSIS

Defendants argue that summary judgment, or in the alternative, summary adjudication, is appropriate because there are no genuine issues of material fact and Defendants

are entitled to judgment as a matter of law.  (ECF No. 30 at 2.)  Plaintiff maintains that summary judgment and summary adjudication are inappropriate because Plaintiff's claims all have merit and there are disputed material facts with respect to every aspect of Defendants' Motion.  (ECF No. 34 at 19.)  Plaintiff's six causes of action include: (1) sex discrimination; (2) retaliation; (3) failure to prevent discrimination, retaliation, and harassment; (4) harassment against Mailloux; (5) wrongful discharge in violation of public policy for claiming workers' compensations benefits; and (6) violation of Labor Code § 970.  (ECF No. 1 at 23–31.)  The Court addresses each of Defendants' arguments for summary judgment and summary adjudication separately below.

### A.  Plaintiff's First Cause of Action: Sex Discrimination

With respect to Plaintiff's first cause of action for sex discrimination, Defendants seek summary adjudication on the following issues: (1) Plaintiff cannot establish a prima facie case for sex discrimination because Plaintiff did not suffer an adverse employment action; (2) Plaintiff cannot establish a prima facie case for sex discrimination because there is no evidence of discriminatory animus based on her gender; (3) Plaintiff's claim for sex discrimination has no merit because Frontier had legitimate, non-discriminatory reasons for the alleged adverse employment actions; and (4) Plaintiff's claim for sex discrimination has no merit because Plaintiff cannot prove that Frontier's legitimate, non-discriminatory reasons are a pretext for gender discrimination.  (ECF No. 30 at 2.)

For guidance on interpreting FEHA claims, California courts generally look to federal case law interpreting claims under Title VII of the Civil Rights Act of 1964.  *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1172 (9th Cir. 2001).  California has adopted the three-stage burden-shifting test established by the United States Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 801–04 (1973), in the employment context, including claims of discrimination based on a theory of disparate treatment under FEHA.  *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000).  Pursuant to the *McDonnell Douglas* framework, a plaintiff is required to meet the following four criteria in order to establish a prima facie case of sex discrimination: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her

9

protected class were treated more favorably or circumstances surrounding the adverse employment action give rise to the inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802.

The *McDonnell Douglas* test places the initial burden on the plaintiff in an effort to eliminate at the outset the most patently meritless claims. *Guz*, 24 Cal. 4th at 354. "While the plaintiff's prima facie burden is not onerous, [s]he must at least show actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a prohibited discriminatory criterion." *Id.* at 355 (internal quotations and citations omitted); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 254.

The burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected or someone else was preferred, for a legitimate nondiscriminatory reason. *Id.* If the defendant so proves, the burden is then shifted back to the plaintiff to establish that the employer's articulated reason was a "pretext" or a cover-up for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802–04. A plaintiff can show pretext "by producing either direct evidence, such as clearly sexist, racist, or similarly discriminatory statements or actions by the employer, or circumstantial evidence supporting an inference of retaliatory or discriminatory motive, so long as such evidence is specific and substantial." *Munoz v. Mabus*, 630 F.3d 856, 865 (9th Cir. 2010) (internal citations and quotations omitted). While a satisfactory evidentiary explanation by the employer for its actions destroys the legally mandatory inference of discrimination arising from the plaintiff's prima facie case, the evidence and inferences that properly can be drawn from the prima facie case may be considered in determining whether the employer's explanation is pretextual. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993).

///

///

1

1.   Prima Facie Case

2        For purposes of this motion, the first element required for establishing a prima

3   facie case of sex discrimination is undisputed.  Plaintiff is a member of a protected class because

4   of her sex.  Additionally, the second element is undisputed as nothing in the record suggests that

5   Plaintiff was unqualified in her position as Associate General Counsel.  Defendants dispute the

6   existence of the third element, which requires Plaintiff to show an adverse employment action

7   occurred.  (ECF No. 30 at 2.)  Additionally, Defendants dispute whether the fourth element is

8   met, which requires Plaintiff to establish that there are similarly situated individuals outside her

9   protected class being treated more favorably, or the circumstances surrounding the adverse

10   employment actions give rise to the inference of discrimination.  (ECF No. 35 at 8.)  Specifically,

11   Defendants argue that Plaintiff cannot establish a prima facie case for sex discrimination because

12   she has not presented evidence showing Frontier's actions were based on her gender.  (ECF No.

13   30 at 2; ECF No. 30-1 at 16–18; ECF No. 35 at 7–9.)  The Court addresses the third and fourth

14   elements below.

15        **a)  Adverse Employment Action**

16        The Ninth Circuit takes an "expansive view" of adverse employment actions under

17   Title VII.  *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000).  Adverse employment actions

18   "materially affect the compensation, terms, conditions, or privileges of . . . employment."

19   *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000).  Common

20   examples of adverse employment actions include: termination, demotion, and job denial.  *Guz*, 24

21   Cal. 4th at 355.  If an employee alleges multiple discriminatory acts, the court need not decide

22   whether each alleged discriminatory act constitutes an adverse employment action.  *See Yanowitz*

23   *v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1055–56 (2005) ("Enforcing a requirement that each act

24   separately constitute an adverse action would subvert the purpose and intent of the [FEHA section

25   12940] statute.").  Instead, the court may analyze the employee's allegations collectively, rather

26   than individually.  *See id.* at 1056.

27        The parties agree that Frontier terminated Plaintiff on August 10, 2012.  (ECF No.

28   34 at 5; ECF No. 30-1 at 7.)  Clearly, the termination of an employee is an adverse employment

1   action.  *See Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 785 (9th Cir. 1986).

2   Notwithstanding this, Defendants argue that Plaintiff cannot claim termination as grounds for

3   gender discrimination because her FAC never alleged that she was terminated based on her

4   gender.  (ECF No. 35 at 9.)  Defendants are incorrect.  Although Plaintiff's gender discrimination

5   claim does not explicitly reference her termination as the adverse employment action, it does

6   reference her termination and thus the Court uses common sense to infer that Plaintiff considered

7   her termination as adverse.  Plaintiff's FAC alleged, "As a result of FRONTIER's discriminatory

8   actions against her, plaintiff has suffered and continues to suffer damages, in the form of lost

9   wages and other employment benefits . . . ."  (ECF No. 1 at 26.)  Plaintiff's lost wages and loss of

10  employment benefits were caused by her termination.  Therefore, Plaintiff suffered and has

11  adequately pleaded an adverse employment action.  Accordingly, the Court DENIES Defendants'

12  Motion for Summary Adjudication as to the issue of whether Plaintiff suffered an adverse

13  employment action.

14              **b)  Similarly Situated Individuals or Circumstances Giving**

15                   **Rise to the Inference of Discrimination**

16              An employee must either (1) demonstrate that similarly situated individuals

17  outside the protected class were treated more favorably, or (2) present evidence of other

18  circumstances surrounding the adverse employment action giving rise to the inference of

19  discrimination.  *See Ortiz v. Georgia Pacific*, 973 F. Supp. 2d 1162, 1173 (E.D. Cal. 2013).  A

20  court may dismiss a complaint that fails to allege a connection between the adverse employment

21  actions and the employee's membership in a protected class.  *Petersen v. Cnty. of Stanislaus*, No.

22  1:12-cv-00933-AWI-BAM, 2012 WL 4863800, at *3 (E.D. Cal. Oct. 12, 2012) (citing *Wood v.

23  City of San Diego*, 678 F.3d 1075, 1081–82 (9th Cir. 2012)).  In employment discrimination

24  cases, employees are similarly situated if they have similar jobs and engage in similar conduct.

25  *Vasquez v. County of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003).  Supervisory employees are not

26  similarly situated to non-supervisory employees.  *Id.*

27              For the purposes of comparing similarly situated individuals, the Court notes

28  Plaintiff is similarly situated to Sayre, Starsick, and Thomson because during the relevant time

1   period they each worked as regional attorneys for Frontier, had non-supervisory roles, shared

2   similar jobs, and engaged in similar conduct.  (ECF No. 34 at 6; ECF No. 30-1 at 9, 13–14.)

3   Plaintiff is not similarly situated to Saville, because although he is a regional attorney, he

4   supervises the other regional attorneys.  (ECF No. 30-1 at 7.)

5           In Plaintiff's FAC, Plaintiff articulated the following grounds for her sex

6   discrimination claim: [7]  (1) Plaintiff did not receive on-site administrative support like her male

7   colleagues Saville, Starsick, and Sayre; (2); Saville criticized Plaintiff's performance by

8   comparing her to Starsick and Sayre, both who have on-site administrative assistance, which

9   resulted in Plaintiff being placed on the PIP; and (3) Plaintiff was terminated.  (ECF No. 1 at 24–

10  26.)  In Plaintiff's Opposition, Plaintiff added the following grounds to her sex discrimination

11  claim: (4) Plaintiff received a lower salary than Starsick and Thomson; (5) Plaintiff was not given

12  relocation costs like Thomson; and (6) Plaintiff was not informed that she would be eligible for a

13  partial year bonus like Starsick.[8]  (ECF No. 34 at 5–8.)

14          First, Plaintiff alleges that she did not receive on-site administrative support like

15  her male colleagues Saville,[9] Sayre, and Starsick.  (ECF No. 34 at 4, 8–11.)  Plaintiff claims that

16  she was the only female regional attorney, and the only regional attorney not provided with on-

17  site administrative support.  (ECF No. 1-1 at 24–25.)  Sayre received on-site support from James,

18  and Starsick received on-site support from Comer.[10]  (ECF No. 34 at 4.)

19  [7] Plaintiff originally stated that she was treated differently from her male colleagues Saville, Starsick, and Sayre

20  because she did not have budget and signature authority.  However, during discovery, it was revealed that Starsick and Sayre did not have budget authority.  (ECF No. 35 at 7.)  As such, Plaintiff no longer claims that her lack of budget and signature authority evidences Frontier's sex discrimination against Plaintiff.  (ECF No. 34 at 13; ECF No.

21  35 at 7.)
    [8] Defendants argue that Plaintiff's newly added allegations regarding her lower salary, lack of relocation benefits, and

22  bonus ineligibility raise a new pay discrimination claim.  (ECF No. 35 at 6–6.)  Because Plaintiff never exhausted her administrative remedies for a pay discrimination claim, Defendants argue that Plaintiff cannot now allege pay

23  discrimination.  (ECF No. 35 at 5–6) (citing *Camp v. Walton Reg'l Med. Ctr.*, No. 3:06-cv-19-CDL, 2007 WL 2027734, at *5–6 n.1 (M.D. Ga. July 12, 2007)).  However, Defendants' argument is inapplicable.  Plaintiff is not

24  bringing a pay discrimination claim, nor has Plaintiff requested leave to amend her FAC to assert such a claim. Plaintiff merely raises the pay disparity allegations as additional grounds for her sex discrimination claim.  As such, it

25  is irrelevant whether Plaintiff exhausted her administrative remedies for pay discrimination—it only matters whether Plaintiff exhausted her administrative remedies for a gender discrimination claim, which she did.

26  [9] As explained, Saville is not similarly situated to Plaintiff, and therefore, the Court does not compare Plaintiff to Saville for the purposes of determining whether a prima facie case of gender discrimination exists.

27  [10] Defendants contend that Plaintiff cannot allege discrimination on this basis in light of Plaintiff's testimony that her work product at Frontier did not suffer because of her lack of on-site support.  (ECF No. 34-1 at ¶ 7.)  However, this

28  statement is not dispositive because it does not show that Plaintiff did not suffer for lack of support, i.e. having to work harder or for longer hours to perform at the level of her male counterparts that have on-site support.  In fact,

1   Plaintiff's second proffered example of discrimination is that Saville criticized her

2   and placed her on the PIP only after Plaintiff informed Saville of her concern that he was

3   comparing her to Sayre and Starsick, who both received on-site assistance.  (ECF No. 1 at 26.)

4   The Court is not convinced that this alone would suffice as a claim for relief.  It is clear that

5   Plaintiff's conversations with Saville concerning her receiving less assistance than her peers was

6   the result of Saville expressing his discontent with Plaintiff's work.  Thus, Plaintiff's argument is

7   an extension of her first—that she was unable to meet the standards of her employer because

8   unlike her male counterparts she did not receive onsite assistance which resulted in her being

9   placed on PIP.  Similarly, Plaintiff's third example of similarly situated individuals being treated

10   differently than her—the fact that she was terminated—is also an extension of the first argument.

11   Plaintiff has also alleged that she was not compensated equally because of her sex.

12   For example, Plaintiff alleges that: she received a lower salary than Starsick and Thomson,

13   despite her equal or better qualifications (ECF No. 34 at 5);[11] she did not receive relocation

14   expenses (ECF No. 34 at 7);[12] and she was not informed of the availability of a partial bonus in

15   2010.[13]  (ECF No. 34 at 7–8.)

16   The Court finds that Plaintiff has presented evidence concerning the lack of onsite

17   assistance and pay variances that could permit a reasonable finder of fact to conclude that

18   similarly situated individuals outside Plaintiff's protected class were treated more favorably than

19

20   Plaintiff stated that her work product could have been improved had she been given an on-site administrative
assistant.  (Pl.'s Dep., ECF No. 30-6 at 116.)  Additionally, Plaintiff claims that had she received the same level of
on-site support as her male colleagues, her workplace wrist injury could have been avoided.  (ECF No. 34 at 17–18 n.
21   4.)
[11] Plaintiff joined Frontier on November 8, 2010, after Frontier offered her the position on September 30, 2010, and
22   she accepted on October 5, 2010.  (ECF No. 1 at 24; ECF No. 30-1 at 7, 9.)  At that time, Plaintiff had 30 years of
telecommunications experience.  (ECF No. 34 at 8.)  Plaintiff alleges that she received less pay than Thomson, who
23   began working for Frontier as an Associate Regional Counsel on April 8, 2013, with 14 years of telecommunications
experience (ECF No. 34 at 8; ECF No. 30-1 at 13–14)  and Starsick, who began working for Frontier on September
24   1, 2010, with 26 years of telecommunications experience.  (ECF No. 34 at 8.)
[12] Plaintiff did not receive relocation expenses.  (ECF No. 34 at 7.)  In contrast, Thomson received a lump sum to
25   cover his relocation expenses.  (ECF No. 34 at 7.)
[13] Plaintiff alleges that Frontier failed to inform her of the availability of a partial bonus in 2010.  (ECF No. 34 at 7–
26   8.)  If Plaintiff had begun working with Frontier prior to October 1, 2010, Plaintiff claims that she would be eligible
for a partial bonus because bonus-eligible employees must be employed by September 30th for a partial bonus.  (ECF
27   No. 34 at 7–8.)  However, Plaintiff was not offered her position until September 30, 2010.  (ECF No. 34 at 7.)
Because Frontier did not inform Plaintiff about the partial bonus, Plaintiff chose not to begin her employment until
28   November 10, 2010.  (ECF No. 34 at 7–8.)  Plaintiff claims that Starsick was hired on September 1, 2010, and
received the 2010 partial bonus.  (ECF No. 34 at 8.)

14

1   Plaintiff.  Thus, the Court turns to Defendants' proffered non-discriminatory reasons for

2   Plaintiff's dismissal from employment.

3                          2.      Frontier's Non-Discriminatory Reasons for the Adverse

4                                  Employment Action

5          Defendants argue Plaintiff's sex discrimination claim is meritless because Frontier

6   had legitimate, non-discriminatory reasons for the alleged adverse employment action.  (ECF No.

7   30 at 2.)  Defendants offer two reasons for Plaintiff's dismissal: (1) Plaintiff was terminated due

8   to Frontier's reorganization of its Legal Department (ECF No. 30-1 at 6, 13); and (2) Plaintiff's

9   position was eliminated due to her poor performance reviews and because Plaintiff's primary

10  client, Baumbach, expressed a lack of confidence in Plaintiff's work.[14]  (ECF No. 30-1 at 6.)

11         Defendants explain that in June 2012, Frontier's Legal Department began to

12  reorganize.  (ECF No. 30-1 at 13.)  On July 8, 2012, Sayre resigned.  (ECF No. 30-1 at 13.)

13  "Because Plaintiff's performance was unacceptable, the Company chose to eliminate Plaintiff's

14  position and hire someone to replace Sayre."  (ECF No. 30-1 at 13.)

15         Defendants contend that Plaintiff's poor performance reviews contributed to her

16  termination.  (ECF No. 30-1 at 6, 10–12, 17.)  First, Defendants explain that in early 2011,

17  Plaintiff received her first performance review, which evaluated her work performance during her

18  two months of employment in 2010.  (ECF No. 30-1 at 10.)  Plaintiff was rated 3.05 out of 5.

19  (ECF No. 30-1 at 10.)  Second, Defendants explain that in early March 2012, Plaintiff received

20

21  [14] Defendants also argue that Plaintiff's lack of on-site support does not evidence discriminatory animus for the
    following reasons: (1) Plaintiff knew that she would not have on-site support before she was hired; (2) Plaintiff

22  testified that her work product at Frontier did not suffer because of her lack of on-site support; (3) Plaintiff lacked on-
    site support was due to budget constraints, business needs, and geography—not gender; (4) Sayre's on-site assistant,

23  Holly James, supports not only Sayre, but also senior management in Rochester, New York and two other attorneys;
    (5) Starsick's on-site assistant, Sheri Comer, assists not only Starsick, but also the executive leadership in West

24  Virginia and two to three other attorneys; (6) the other male attorneys at Frontier, Tom Gausden and Rob Haderlein,
    do not have on-site support; (7) Thomson, who was hired to replace Sayre, does not have on-site support; and (8)

25  Plaintiff admits that her lack of on-site support did not impact her work product.  (ECF No. 30-1 at 15–16; ECF No.
    35 at 7.)

26         The Court notes that many of the above non-discriminatory reasons supplied by Defendants are not non-
    discriminatory reasons, but contentions in which Defendants dispute Plaintiff's allegations supporting her prima facie

27  case.  For example, Defendant disputes whether Plaintiff was disadvantaged compared to her peers by a lack of on-
    site support.  These allegations do not provide non-discriminatory reasons, but instead show that there are material
    issues of fact as to whether the lack of support was discriminatory.  Such an inquiry requires a credibility

28  determination which is not the province of this Court, but that of a jury as the fact finder.  Thus, the Court did not
    address these arguments in detail.

                                                       15

her second performance review, which evaluated her work performance during 2011.  (ECF No. 30-1 at 10.)  Plaintiff received the same score of 3.05 out of 5.  (ECF No. 30-1 at 10–11.)  According to Defendants, Plaintiff received the lowest rating of all the attorneys supervised by Saville, and Abernathy considered Plaintiff as the lowest ranked attorney at Frontier in terms of performance and interactions.  (ECF No. 30-1 at 11.)  Additionally, Defendants suggest Baumbach's lack of trust contributed to Plaintiff's termination.  (ECF No. 30-1 at 11–12.)  At Plaintiff's review in March 2012, Saville informed Plaintiff that she had not gained Baumbach's confidence, and that Baumbach continued to go to Saville for legal help.  (ECF No. 30-1 at 11.)  According to Defendants, shortly after the meeting, Baumbach had three bad experiences with Plaintiff.  (ECF No. 30-1 at 11–12.)

Because Defendants have presented evidence to rebut Plaintiff's prime facie case of discrimination, the burden is shifted back to Plaintiff.  Plaintiff retains the burden of persuasion, and must demonstrate that Defendants' proffered reasons were not the true reason for her termination.  *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 256.

### 3.   Plaintiff's Evidence of Pretext

Plaintiff argues that Defendants' proffered reasons are pretexts for unlawful sex discrimination.  (ECF No. 34 at 11–13.)  Specifically, Plaintiff disputes the accuracy and existence of the three events that Baumbach describes.  (ECF No. 34 at 11–13.)  For example, Defendants state that Ms. Baumbach was dissatisfied with Plaintiff's communication with a State Senator during Frontier's 2012 California Lobby Day.  Plaintiff contends that this reason is pretextual because Plaintiff did not meet with the State Senator referred to by Ms. Baumbach, and in fact only met with one of the State Senator's staff members.  (ECF No. 34 at 11.)  Plaintiff also alleges that she never "dropped by" Ms. Baumbach's office without an appointment as Defendants contend.  (ECF No. 12.)  Plaintiff states that she never came to Ms. Baumbach's office without an appointment and contends that she asked for Ms. Baumbach's calendars and a log of her key card access to the building where Ms. Baumbach's office was housed in order to demonstrate that Ms. Baumbach's alleged disatisfaction was pretextual.  (ECF No. 12.)  Plainitff asserts that Defendants failed to produce these items.  (ECF No. 12–13.)

Plaintiff's opposition and declaration create genuine issues of material fact as to whether Frontier's articulated, non-discriminatory reasons for its actions are pretextual. Although Plaintiff's arguments as to prextext only address Plaintiff's work performance, the Court finds that Plaintiff's contentions sufficiently raise questions as to the credibility of Defendants' claims that Plaintiff's work was deficient and thus creates suspicion as to the validity of Defendants' other proffered reasons. *See Munoz*, 630 F.3d at, 865 (holding that circumstantial evidence supporting an inference of retaliatory or discriminatory motive, so long as such evidence is specific and substantial, satisfies a plaintiff's burden of showing pretext). Therefore, the Court DENIES Defendants' Motion for Summary Judgment on Plaintiff's discrimination cause of action on this ground. Additionally, the Court DENIES Defendants' Motion for Summary Adjudication as to the issue of whether Plaintiff can establish that Frontier's articulated reasons were pretexts for gender discrimination.

### B. Plaintiff's Second Cause of Action: Retaliation

Defendants seek summary adjudication on Plaintiff's second cause of action stating that Plaintiff's claim for retaliation has no merit because: (1) Plaintiff cannot show a causal link between her alleged protected activity and her termination; (2) Frontier had legitimate, non-discriminatory reasons for the alleged adverse employment; and (3) Plaintiff cannot prove that Frontier's legitimate, non-discriminatory reasons are a pretext for retaliatory animus. (ECF No. 30 at 2–3.)

"Retaliatory discharge claims follow the same burden-shifting framework described in *McDonnell Douglas*." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). To establish a prima facie case for retaliation under FEHA, the employee must show the following: (1) she engaged in a protected activity; (2) she was subsequently subjected to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (citations omitted). If the employee establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment action. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996) (citations omitted). If the employer is able to

1   articulate a legitimate, non-discriminatory reason, the burden shifts back to the employee to show

2   the employer's reason was pretextual.  *Id.*

3           1.  <u>Prima Facie Case</u>

4           At the outset, the Court finds that the second element, an adverse employment

5   action, has been clearly met.  The termination of an employee unquestionably constitutes an

6   adverse employment action.  *See Guz*, 24 Cal. 4th at 355.  Plaintiff was terminated.  Therefore,

7   for purposes of this motion, it is undisputed that there was an adverse employment action.

8           Thus, the Court shall focus its inquiry on the first and third elements.

9           **a)  The First Element: Protected Activity**

10           Plaintiff alleges that she engaged in a protected activity by opposing and

11   complaining about (1) Frontier's discriminatory acts, and (2) Mailloux's harassment.  (ECF No. 1

12   at 26.)  California Government Code section 12940(h) indicates that a protected activity may take

13   many forms.  *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1143–44 (E.D. Cal. 2010)

14   (quoting *Yanowitz*, 36 Cal. 4th at 1042).[15]  At a minimum, a protected activity must involve

15   "some level of opposition to the employer's actions based on the employee's reasonable belief

16   that some act or practice of the employer is unlawful."  *Id.* at 1144; *see also Raad v. Fairbanks N.*

17   *Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).  Informal complaints to an

18   employer constitute a protected activity.  *Passantino v. Johnson & Johnson Consumer Prods.*,

19   212 F.3d 493, 506 (9th Cir. 2000).  However, an employee's complaint must alert her employer

20   of her "belief that discrimination, not merely unfair personnel treatment, had occurred."  *Lewis v.*

21   *City of Fresno*, 834 F. Supp. 2d 990, 1002 (E.D. Cal. 2011) (internal citations omitted).  "Further,

22   there must be some evidence that the employer knew that the employee was engaged in activities

23   in opposition to the employer at the time of the claimed retaliatory action."  *Kelley*, 750 F. Supp.

24   2d at 1144.  Thus, in order for an employee's complaint to constitute a protected activity, the

25   complaint must notify the employer that the employee believes discrimination has occurred.  *See*

26   *Passantino*, 212 F.3d at 506; *Lewis*, 834 F. Supp. 2d at 1002.  Merely complaining of unfair

27

28   [15] As noted *infra*, California court decisions interpreting FEHA claims parallel federal court cases interpreting Title VII claims.  *Kohler*, 244 F.3d at 1172.

18

treatment is insufficient to constitute a protected activity.  *Lewis*, 834 F. Supp. 2d at 1002.

It is undisputed that Plaintiff emailed Saville on April 10, 2012, complaining that all of her male peers have on-site assistance.  (ECF No. 34 at 4, 17; ECF No. 30-1 at 12.)  In May 2012, Plaintiff complained of Mailloux's remark that Plaintiff was "playing the victim."  (ECF No. 1 at 26.)  Defendants do not dispute that Plaintiff raised these concerns but argue that Plaintiff cannot show a causal link.

### b)  The Third Element: A Causal Link

The causal link requires evidence showing the employer was aware that the employee had engaged in a protected activity.  *Cohen*, 686 F.2d at 796.  The plaintiff must establish, by a preponderance of the evidence, "that engaging in the protected activity was one of the reasons for the firing and that but for such activity the plaintiff would not have been fired." *Ruggles*, 797 F.2d at 785 (quoting *Kauffman v. Sidereal Corp.*, 695 F.2d 343, 345 (9th Cir. 1982)).  "The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action."  *Dawson*, 630 F.3d at 936 (citing *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988)).

Defendants dispute Plaintiff's assertion that her April 10, 2012, email to Saville began the process of her termination.  Saville informed Plaintiff a month prior to her complaint that her work on an arbitration matter was unacceptable.  (*See* Pl.'s Response to Defs' Undisputed Material Facts, ECF No. 34-1 at ¶ 45.)  Defendants contend that Plaintiff's complaints were made after she had already become aware of negative feedback concerning her performance. Defendants also aver that Frontier executives began discussing terminating Plaintiff prior to her complaints that she was treated differently than her male peers and regarding Mailloux's comment.  (ECF No. 30-1 at 13, 18–19.)  Specifically, Defendants claim Abernathy and Saville discussed Plaintiff's termination in February 2012.  (ECF No. 30-1 at 13, 19.)

Plaintiff disputes Defendants' argument and asserts that an email sent by Abernathy shows that the decision to terminate Plaintiff was made after Plaintiff complained of discrimination:

1

2

3

4

> On April 10, 2012 Whitten wrote to Saville making a complaint of sex discrimination. (Whitten Depo. Ex. 22.) On April 12, 2012 Abernathy writes to McKenney, "After speaking with both Denise and Kevin it appears that Phyllis is not going to be able to adapt and adjust to the demands of the job. I would like to give her severance and handle this with respect because she has tried but it is simply not working. What do you recommend with regard to severance?" (Email Abernathy to McKenney, April 12, 2012, Abernathy Depo. Ex. 88.)

5

6

(ECF No. 34-1 at ¶ 54; *see also* Email Abernathy to McKenney, April 12, 2012, ECF No. 34-9.)

7

          The Court finds that this statement creates a material issue of fact as to whether the

8

decision to terminate Plaintiff was made before or after Plaintiff complained of unequal

9

treatment. Thus, Plaintiff has made a prime facie showing of retaliation and the burden is shifted

10

to Defendants to proffer nondiscriminatory reasons for Plaintiff's termination.

11

                    2.   Frontier's Non-Discriminatory Reasons for Terminating Plaintiff

12

          Defendants argue that Plaintiff's retaliation claim has no merit because Frontier

13

had legitimate, non-discriminatory reasons for Plaintiff's termination. (ECF No. 30 at 3.)

14

Defendants allege that Plaintiff was terminated after Frontier decided to reorganize its Legal

15

Department, which resulted in the elimination of a regional attorney position. (ECF No. 30-1 at

16

18–19.) Defendants explain, "After Sayre resigned from Frontier on July 8, 2012, the decision

17

was made to restructure the Legal Department and eliminate one of the positions under Saville."

18

(ECF No. 30-1 at 19.) According to Defendants, Plaintiff's position was eliminated because

19

Plaintiff was the bottom ranked performer in the Legal Department and Plaintiff's primary client,

20

Baumbach, expressed that she lacked confidence in Plaintiff. (ECF No. 30-1 at 6, 18.)

21

Therefore, Defendants have presented sufficient evidence that a jury could find a legitimate

22

reason for terminating Plaintiff, and the burden is shifted to Plaintiff to show evidence of pretext.

23

                    3.   Plaintiff's Evidence of Pretext

24

          Plaintiff argues that Abernathy's decision to fire Plaintiff two days after Plaintiff

25

sent her April 10th email evidences retaliatory animus. (ECF No. 34 at 14–15.) The Court

26

agrees. This information creates a material issue of fact and thus Defendants' motion for

27

summary judgment as to Plaintiffs' Second Cause of Action: Retaliation is DENIED.

28

///

20

### C.  Plaintiff's Third Cause of Action: Failure to Prevent Discrimination, Retaliation, and Harassment

Defendants seek summary adjudication on Plaintiff's Third Cause of Action on the grounds that there is no underlying violation to support an action for failure to prevent discrimination, retaliation, or harassment.  (ECF No. 30 at 3.)  Under FEHA, it is an unlawful employment practice "[f]or an employer . . . to fail to take all reasonable steps to prevent discrimination . . . from occurring."  Cal. Gov. Code § 12940(k).  "One such reasonable step, and one that is required in order to ensure a discrimination-free work environment, is a prompt investigation of [a] discrimination claim."  *Washington v. Cal. City Corr. Cent.*, 871 F. Supp. 2d 1010, 1027 (E.D. Cal. 2012) (quoting *Cal. Fair Emp't and Hous. Comm'n v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1024 (2004)).  "Other reasonable steps an employer might take include the establishment and promulgation of antidiscrimination policies and the implementation of effective procedures to handle complaints and grievances regarding discrimination."  *Id.* (quoting *Cal. Fair Emp't and Hous. Comm'n*, 122 Cal. App. 4th at 1025).  Defendants' argument is predicated on this Court granting its summary judgment motion as to Plaintiff's First and Second Cause of Action.  Because the Court has denied Defendants' motion as to those two claims, Defendants' argument as to the Third Cause of Action fails.  Thus, Defendants' motion for summary judgment as to Plaintiff's Third Cause of Action is DENIED.

### D.  Plaintiff's Fourth Cause of Action: Harassment Against Mailloux

Defendants seek summary judgment on Plaintiff's fourth cause of action for harassment against Defendant Mailloux on the following issues: (1) Plaintiff's claim for harassment has no merit because the alleged harassment was not severe or pervasive; (2) Plaintiff's claim for harassment has no merit because Plaintiff cannot prove the alleged harassment was based on her gender; (3) Plaintiff's claim for harassment has no merit because Plaintiff cannot prove the alleged harassment was based on her work related injuries; and (4) to the extent Plaintiff is alleging that the harassment is based on her workers' compensation claim, Plaintiff's claim  has no merit because such claims can only be brought before the Workers' Compensation Appeals Board.  (ECF No. 30 at 3.)

1    California's FEHA prohibits an employer or any other person from harassing an

2    employee due to ". . . physical disability, mental disability, medical condition, . . . sex, [or] gender

3    . . . ." Cal. Gov. Code § 12940(j)(1).  Harassment is distinct from discrimination.  *Gathenji v.*

4    *Autozoners, LLC*, 703 F. Supp. 2d 1017, 1032 (E.D. Cal. 2010).  "[H]arassment refers to bias that

5    is expressed or communicated through interpersonal relations in the workplace[,] . . . and focuses

6    on situations in which the *social environment* of the workplace becomes intolerable because the

7    harassment (whether verbal, physical, or visual) communicates an offensive message to the

8    harassed employee."[16]  *Id.* (quoting *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009)).

9    "Harassment is actionable if the defendant's conduct would have interfered with a reasonable

10   employee's work performance and would have seriously affected the psychological well-being of

11   a reasonable employee and [the plaintiff] was actually offended."  *Velente-Hook v. E. Plumas*

12   *Health Care*, 368 F. Supp. 2d 1084, 1102 (internal citations omitted).

13   Generally, to establish a prima facie case for harassment, a plaintiff must show

14   that: (1) she is a member of a protected group; (2) she was subjected to harassment because she is

15   a member of that protected group; and (3) the harassment was so severe that it created a hostile

16   work environment.  *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013)

17   (citing *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121 (1999)).

18   The Court agrees that Plaintiff's allegations in support of her harassment claim do

19   not rise to the level of being "so severe that it created a hostile work environment."  *See id.*  Thus

20   for the reasons set forth below, Plaintiff cannot meet the third element, and the Court grants

21   Defendants' motion for summary judgment as to Plaintiff's Fourth Cause of Action.

22   To succeed, Plaintiff must allege the conduct was sufficiently severe or pervasive

23   to alter the conditions of the victim's employment and create an abusive working environment.

24   *Ortiz*, 973 F. Supp. 2d at 1178 (citing *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th

25   Cir. 2007)).  Additionally, the employee must perceive the work environment as both subjectively

26   and objectively abusive.  *See id.*; *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir.

27

28   [16] Discrimination, on the other hand, "refers to bias in the exercise of official actions on behalf of the employer."  *Id.* (quoting *Roby*, 47 Cal. 4th at 706).

1   1995) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)).  Courts consider the

2   totality of circumstances in determining whether a hostile work environment exists.  *Harris*, 510

3   U.S. at 21.

4          Plaintiff claims that Mailloux harassed her because of her (1) gender, (2) work-

5   caused physical injuries, and (3) complaints of discrimination to Saville.  (ECF No. 1 at 27.)  The

6   Court addresses each of Plaintiff's claims in turn.

7          Plaintiff's gender and work-related physical injuries are intertwined.  Plaintiff

8   claims that Mailloux made two harassing comments: (1) Mailloux's comment that Plaintiff was

9   "playing the victim" due to her gender and/or wrist injury; and (2) Mailloux's comment about

10  Frontier female executives.  (ECF No. 1 at 26, 28.)  Additionally, in Plaintiff's Opposition,

11  Plaintiff adds that Mailloux told Plaintiff to get a glass of water, and when she rose to do so,

12  Mailloux told her to sit down.  (ECF No. 34 at 15.)

13         "Workplace conduct is not measured in isolation; instead, whether an environment

14  is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the

15  frequency of the discriminatory conduct; its severity; whether it is physically threatening or

16  humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

17  employee's work performance."  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001)

18  (internal quotations omitted).  The behavior alleged by Plaintiff consists of three incidents, none

19  of which involved any sort of physical threat.  *See Beyda v. City of Los Angeles*, 65 Cal. App. 4th

20  511, 517 (1998) (workplace must be "permeated with discriminatory intimidation, ridicule and

21  insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment

22  and create an abusive working environment"); *Fisher*, 214 Cal. App. 3d at 610 (1990) ("acts of

23  harassment cannot be occasional, isolated, sporadic, or trivial, rather the plaintiff must show a

24  concerted pattern of harassment of a repeated, routine or generalized nature").

25         As to Plaintiff's harassment claim concerning Mailloux's comment about her

26  "playing the victim," this statement was made in the context of Plaintiff's PIP meeting in which

27  Mailloux and Plaintiff were discussing problems with her performance.  During these discussions,

28  Plaintiff made comments about having tendonitis and being treated differently from her male

23

1    counterparts, who allegedly has on-site support.  Plaintiff testified that she wasn't sure if

2    Mailloux's comment was made in reference to her alleged wrist injury or her discussions about

3    gender issues or both.  (Whitten Depo., 268:15–269:03; 272:10–274:07; 768:01–07.)  This

4    comment, albeit uncompassionate, does not rise to the level of pervasive.  *See Faragher v. City of*

5    *Boca Raton*, 524 U.S. 775, 788 (1998) ("'simple teasing,' . . . offhand comments, and isolated

6    incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and

7    conditions of employment").  Moreover, Plaintiff's unspecified comments that Mailloux allegedly

8    made about female executives also fails to establish a work environment that is both subjectively

9    and objectively abusive.  Finally, as to Plaintiff's comment that Mailloux told Plaintiff to get a

10   glass of water, and when she rose to do so, Mailloux told her to sit down, this again does not meet

11   the pervasive standard.  *See Haberman v. Cengage Learning, Inc.*, 180 Cal. App. 4th 365, 382–86

12   (2009) (finding no harassment when some comments were not clearly sexual and sex-based

13   comments were innocuous and only mildly offensive).  Consequently, Plaintiff cannot meet the

14   third element required to bring a harassment claim, and thus Defendants' motion for summary

15   judgment as to Plaintiff's Fourth Cause of Action is granted.

16            **E.  Plaintiff's Fifth Cause of Action: Wrongful Termination in Violation of**

17                   **Public Policy for Claiming Workers' Compensation Benefits**

18            Defendants seek summary adjudication on Plaintiff's fifth cause of action for

19   wrongful discharge in violation of public policy for claiming workers' compensations benefits on

20   the following grounds: (1) Plaintiff failed to bring her claims before the Workers' Compensation

21   Appeals Board ("WCAB"), which is the exclusive forum for bringing claims based upon

22   California Labor Code section 132a; and (2) Plaintiff's claim, to the extent it is based upon

23   Plaintiff's second and fourth causes of action, is derivative and she cannot prove those claims.

24   (ECF No. 30 at 3–4.)  Because the Court has found that Plaintiff's Second Cause of Action may

25   proceed, the Court need not address Defendants' second argument.

26            As to Defendants' first argument that this Court lacks jurisdiction over this claim

27   pursuant to California Labor Code section 132a, this Court agrees.  California Labor Code section

28   132a states as follows:

                                              24

1

It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment.

2

3

(1) Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file a claim for compensation with his or her employer or an application for adjudication, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250).  Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer.

4

5

6

7

8

9

10   Here, Plaintiff is alleging that she was terminated because of her worker's compensation claim.

11   These allegations fall squarely within the objective of section 132a.

12                    A claim under section 132a must be brought to the WCAB; the WCAB is the

13   exclusive forum for claims under section 132a.  *See Dutra v. Mercy Medical Center*, 209 Cal.

14   App. 4th 750, 756 (2012); *Capote v. CSK Auto, Inc.*, No. 12–CV–02958–JST, 2014 WL 1614340,

15   at *12 (N.D. Cal. 2014); *Steiner v. Verizon Wireless*, No. 2:13–CV–1457–JAM–KJN, 2014 WL

16   202741, at *3–4 (E.D. Cal. Jan. 17, 2014) (section 132a claim "falls under the exclusive

17   jurisdiction of the Workers' Compensation Appeals Board").  Although section 132a does not

18   provide the exclusive remedy for the conduct and resulting harm alleged by Plaintiff and does not

19   preclude her from "pursuing FEHA and common law [ ] remedies," it does preclude Plaintiff's

20   tort claim.  Similar claims under FEHA are viable and not precluded by section 132a as stated in

21   *Fretland*.  69 Cal.App.4th at 1485–86, 82 Cal.Rptr.2d 359.

22                    Plaintiff's argument that the California Supreme Court's decision in *City of*

23   *Moorpark v. Superior Court*, 18 Cal. 4th 1143 (1998), requires a different outcome is misplaced.

24   This argument has been addressed by many courts:

25

26

[T]he California Supreme Court in *Moorpark* clarified that for a plaintiff alleging disability discrimination, § 132a was not the exclusive remedy—a plaintiff could also look to FEHA or common law principles for relief.  *Moorpark*, 18 Cal.4th at 1158, 77 Cal. Rptr.2d 445, 959 P.2d 752 (holding that for disability

27

28

discrimination, "section 132a does not provide an exclusive remedy and does not preclude an employee from pursuing FEHA and common law wrongful discharge remedies"). Nonetheless, for claims that are brought under § 132a, "the Workers Compensation Appeals Board [is] the exclusive forum...." *Id.* at 1156, 77 Cal. Rptr. 2d 445, 959 P.2d 752. Thus, while plaintiff has various alternative means of recovery based on his allegation of disability discrimination, a claim under § 132a is only proper before the WCAB.

*Greenly v. Sara Lee Corp.*, No. CIV. S-06-1775 WBS EFB, 2006 WL3716769, at *9 (E.D. Cal. Dec. 15, 2006); *see also Stone v. Severn Trent Servs., Inc.*, No. 2:14-CV-00689-JAM, 2014 WL 3837481, at *2 (E.D. Cal. July 30, 2014) (dismissing plaintiff's 132a claim for lack of jurisdiction); *Steiner v. Verizon Wireless*, 2014 WL 202741, at *3–4 (section 132a claim "falls under the exclusive jurisdiction of the Workers' Compensation Appeals Board"); *Gwin v. Target Corp.*, No. 12-05995 JCS, 2013 WL 5424711, at *7 (N.D. Cal. Sept. 27, 2013) (finding that section 132a claims are under the exclusive jurisdiction of the WCAB).

Here, although Plaintiff alleges otherwise, the gravamen of Plaintiff's claim is that she was terminated because she filed for workers' compensation benefits or because she suffered a work-related injury, such a claim likewise falls under the exclusive jurisdiction of the WCAB. *Steiner*, 2014 WL 202741, at *4. As a result, the Court finds Plaintiff's Fifth Cause of Action is improperly brought before it. Accordingly, the Court GRANTS Defendants' Motion to Dismiss with prejudice.

### F.   Plaintiff's Sixth Cause of Action: Violation of Labor Code Section 970

Lastly, Defendants seek summary adjudication on Plaintiff's sixth cause of action for Frontier's violation of California Labor Code section 970 on the grounds that Plaintiff cannot establish a prima facie case because Plaintiff cannot prove that Frontier made false misrepresentations about the nature of Plaintiff's work that induced her to move to California. (ECF No. 30 at 4; ECF No. 30-1 at 24–25.) Defendants explain that Saville never made any specific promises about the duration of Plaintiff's employment during the interview process. (ECF No. 30-1 at.) Whereas Plaintiff claims that Saville promised her "a job with a good and secure future." (ECF No. 1 at 29.)

California Labor Code section 970 prohibits employers from influencing or

26

1    persuading someone to move for a job by making knowingly false representations concerning the

2    nature or duration of the work.  Specifically, section 970 states,

3        No person, or agent or officer thereof, directly or indirectly, shall influence,
         persuade, or engage any person to change from one place to another in this State or
4        from any place outside to any place within the State, or from any place within the
         State to any place outside, for the purpose of working in any branch of labor,
5        through or by means of knowingly false representations, whether spoken, written,
         or advertised in printed form, concerning either: (a) The kind, character, or
6        existence of work; (b) The length of time such work will last, or the compensation
         therefor; . . . .
7

8    Cal. Lab. Code § 970.

9            Prior to beginning her employment with Frontier, Plaintiff lived in the

10   Washington, D.C. area.  (ECF No. 1 at 24; ECF No. 30-1 at 7.)  Plaintiff alleges that it was

11   Seville's promises "that she was being offered a job with a good and secure future" that caused

12   her to accept the position and move to California in order to work for Frontier.  (ECF No. 1 at ¶¶

13   37–45.)  In her opposition, Plaintiff alleges that Mr. Saville's statements that he did his work

14   himself and did not have help, coupled with Mr. Saville's active suppression of the fact that he

15   and Mr. Starsick (and Mr. Sayre, for that matter) had on-site administrative support, constitutes a

16   "false representation … of the character of the work" supporting a claim, trial and relief under

17   Labor Code § 970.  (ECF No. 34 at 18.)

18           As to Plaintiff's first contention that Seville misrepresented to Plaintiff that "she

19   was being offered a job with a good and secure future," to establish such a claim, Plaintiff must

20   prove that Saville made a knowingly false representation regarding the length of her employment,

21   with the intent to persuade her to move there from another place to take the position.  *Finch v.*

22   *Brenda Raceway Corp.*, 22 Cal. App. 4th 547, 553 (1994).  Plaintiff has presented no evidence

23   that it was Saville's intention to employ her on a temporary basis.  Instead, the evidence supports

24   Defendants' contentions that Plaintiff was terminated based on performance.  Even if Plaintiff

25   was terminated for her complaints about unfair treatment or her worker's compensation claim,

26   neither of these reasons supports a finding or inference that Saville had intentions of Plaintiff's

27   employment being temporary at the time she was hired.  *Cf. Finch*, 22 Cal. App. 4th at 553

28   (finding evidence of a section 970 violation where the plaintiff was repeatedly assured during

1    hiring that the position was permanent but the hiring party told other members of the staff that he

2    was hiring Plaintiff only temporarily, until his first choice candidate from Michigan was able to

3    move to California).

4           As to Plaintiff's second proffered misrepresentation—that Mr. Saville stated that

5    he did not have help while suppressing the fact that he and Mr. Starsick (and Mr. Sayre, for that

6    matter) had on-site administrative support—the Court is unconvinced that this statement can

7    support relief under section 970.  Section 970 forbids an employer from making false

8    representations about the kind, character or existence of the employee's work.  *Tyco Indus., Inc.*

9    *v. Superior Court*, 164 Cal. App. 3d 148, 155 (1985).  Here, the statements complained of do not

10   relate to the nature of Plaintiff's work, but instead relate to how Mr. Saville did his job.  The

11   Court is unaware of any case law, nor has Plaintiff provided any, that would support recovery on

12   this basis.  Thus, Defendants' motion for summary judgment as to Plaintiff's Sixth Cause of

13   Action: Violation of Labor Code Section 970 is GRANTED.

14          **V.    CONCLUSION**

15          For the reasons set forth above, Defendants' Motion for Summary Judgment or, in

16   the alternative, Motion for Summary Adjudication is GRANTED IN PART and DENIED IN

17   PART.  The Court orders as follows:

18          1.     Defendants' motion for summary judgment or in the alternative summary

19   adjudication for Plaintiff's First Cause of Action for Sex Discrimination is DENIED;

20          2.     Defendants' motion for summary judgment or in the alternative summary

21   adjudication for Plaintiff's Second Cause of Action for Retaliation is DENIED;

22          3.     Defendants' motion for summary judgment or in the alternative summary

23   adjudication for Plaintiff's Third Cause of Action for Failure to Prevent Discrimination,

24   Retaliation and Harassment is DENIED;

25          4.     Defendants' motion for summary judgment as to Plaintiff's Fourth Cause

26   of Action for Harassment is GRANTED;

27          5.     Defendants' motion for summary judgment as to Plaintiff's Fifth Cause of

28   Action for Wrongful Termination in Violation of Public Policy is GRANTED;

1          6.      Defendants' motion for summary judgment as to Plaintiff's Sixth Cause of

2   Action for Violations of California Labor Code § 907 is GRANTED.

3         IT IS SO ORDERED.

4

5   Dated:  January 20, 2015

6

7         Troy L. Nunley

8         United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28